# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JOSE ANGEL DIAZ CERVANTES, S-H-,
MOHAMMAD SANCHARKI, and
MOHAMMADREZA OMIDIAN,

      Petitioners,

v.                                                                                    No. 1:26-cv-01246-DHU-LF

MELISSA ORTIZ, Acting Warden, Torrance
County Detention Facility; JOEL GARCIA,
Field Office Director, El Paso Field Office, U.S.
Immigration and Customs Enforcement; TODD M.
LYONS, Acting ICE Director; MARKWAYNE
MULLIN, Secretary of Homeland Security; and TODD
BLANCHE, Acting U.S. Attorney General,

      Respondents.

### ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

THIS MATTER is before the Court on Petitioners' Verified Petition for Writ of Habeas Corpus ("Petition"). Doc. 2. For the reasons set forth below, the Court **GRANTS** the Petition.

## I.
## BACKGROUND

The four Petitioners in this matter—Jose Angel Diaz Cervantes, S-H-,[1] Mohammad Sancharki, and Mohammadreza Omidian—present their own set of facts and circumstances. The Court will summarize each of these facts and circumstances in turn.

---

[1] Petitioner S-H- filed a Motion for Leave to Proceed Under a Pseudonym, citing a reasonable fear that revealing his name in public filings would subject him or his family members still in his home country to increased scrutiny and further harm. The Tenth Circuit Court of Appeals has found it appropriate to allow a party to proceed under a pseudonym in cases involving a "real danger of physical harm[.]" *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000). Because Petitioner S-H- has articulated such a danger, the Court **GRANTS** Petitioner's Motion for Leave to Proceed Under Pseudonym (Doc. 3), and the Court will refer to this Petitioner throughout this Order only by his requested pseudonym, S-H-.

Petitioner **Jose Angel Diaz Cervantes** was ordered removed from the United States but granted Withholding of Removal from his home country of Mexico under the Convention Against Torture ("CAT") in 2019. Doc. 2 ¶¶ 58-59. He was released from detention shortly thereafter. *Id.* ¶ 60. On June 15, 2025, Immigration and Customs Enforcement ("ICE") arrested and re-detained Mr. Diaz Cervantes while riding his bike to work. *Id.* ¶ 62. He was eventually transferred to the Torrance County Detention Facility ("TCDF") in Estancia, New Mexico, where he remains detained. *Id.* ¶ 66.

Petitioner **S-H-** arrived at the United States to seek asylum on February 13, 2025. *Id.* ¶¶ 71-72. He was immediately detained by immigration officials and placed in removal proceedings. *Id.* ¶ 72. On October 6, 2025, he was ordered removed but granted Withholding of Removal from his home country of Iran. *Id.* ¶ 74. His order of removal became final on November 5, 2025, and he remains detained at the TCDF. *Id.* ¶¶ 73-74.

Petitioner **Mohammad Sancharki** also arrived at the United States to seek asylum on or around February 13, 2025. *Id.* ¶ 84. He was also immediately detained by immigration officials and placed in removal proceedings. *Id.* ¶ 85. On December 12, 2025, Mr. Sancharki was ordered removed but granted Withholding of Removal from Afghanistan under CAT. *Id.* ¶ 86. He waived his right to appeal the removal order, so the order became final that day. *Id.* He remains detained at the TCDF.

Petitioner **Mohammadreza Omidian** has lived in the United States since 1999 after a previous release from immigration detention on bond. *Id.* ¶¶ 96-97. In 2006, he was ordered removed *in absentia* after failing to appear at a hearing. *Id.* ¶ 98. Mr. Omidian attempted to reopen his case, but was unsuccessful. *Id.* Nevertheless, he lived freely in Florida for many years. *Id.* ¶

99. On June 25, 2025, ICE re-detained Mr. Omidian. *Id.* ¶ 100. He remains detained at the TCDF. *Id.*

Petitioners subsequently filed the instant Petition. They argue that their prolonged post-removal detention violates the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231, and the Due Process Clause of the Fifth Amendment. *Id.* ¶¶ 107-120.[2] Petitioners seek their immediate release or, alternatively, a custody review. *Id.* at 35. They also seek return of their property, and attorney fees and costs pursuant to the Equal Access to Justice Act ("EAJA") *Id.* Respondents submitted their response. Doc. 13. Petitioners submitted a reply. Doc. 15.

## II.
## LEGAL STANDARDS

Habeas relief is available when a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitioner seeks habeas relief, arguing that he is being detained in violation of  Section 1231 and the Due Process Clause.

Generally, when a noncitizen becomes subject to a final order of removal, the U.S. Department of Homeland Security ("DHS") "must physically remove him from the United States" within 90 days. *Johnson v. Guzman Chavez*, 594 U.S. 523, 528, 141 S.Ct. 2271 (citing § 1231(a)(1)(A)). This is commonly referred to as the "removal period." *Id.* During the removal period, DHS "shall detain the [noncitizen]" as it conducts the removal. § 1231(a)(1)-(2). If DHS does not remove the noncitizen during the removal period, the noncitizen must be released

---

[2] Petitioners also allege that their detention violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). *Id.* ¶ 106. Petitioners Diaz Cervantes, S-H-, and Sancharki also allege violations of federal regulations and their procedural due process rights with respect to the Government's custody review and withholding release policy. *Id.* ¶¶ 121-151. However, because the Court grants Petitioners' Habeas Petition on their 1231 and Due Process claims, the Court "decline[s] to address th[ese] remaining claims of error." *Scott v. Mullin*, 303 F.3d 1222, 1232 (10th Cir. 2002).

"pending removal . . . subject to supervision under regulations prescribed by the Attorney General." § 1231(a)(3).

Under Section 1231, a noncitizen's 90-day removal period "may be extended in at least three circumstances." *See Johnson*, 594 U.S. at 528-29 (citing §§ 1231(a)(1)(C), (c)(2)(A), (a)(6)). This extended period is commonly referred to as the "post-removal-period." *Id.* at 529. Section 1231, however, "does not permit indefinite detention." *Zadvydas v. Davis*, 533 U.S. 678, 689, 701, 121 S.Ct. 2491 (2001). The post-removal period is, instead, limited to "a period reasonably necessary to bring about [the noncitizen's] removal from the United States," which is presumptively 6 months, or one 180 days. *Id.* [3] "After that point, if the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must either rebut that showing or release [him]." *Johnson*, 594 U.S. at 529; *see also* 8 C.F.R. § 241.13. To satisfy his burden of providing good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the noncitizen need not "show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable." *Zadvydas*, 533 U.S. at 702. "And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* at 701.

If the noncitizen's removal is not reasonably foreseeable, the Court "should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699-700. "In that case, . . . the [noncitizen's] release may and should be conditioned on any of the various forms of

---

[3] "Although not expressly stated, the Supreme Court appears to view the 6-month period to include the 90-day removal period plus 90 days thereafter." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2006).

supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of these conditions." *Id.* at 700.

### III.
### DISCUSSION

Petitioners argue that their prolonged post-removal detention violates Section 1231 and the Due Process Clause. Doc. 2 ¶¶ 107-120. First, the Court finds that the post-removal period, which is presumptively reasonable until 6 months, has expired. Petitioners Diaz Cervantes and Omidian have been detained since June 2025—over 1 year. Petitioner S-H- has been detained for over 8 months since his order of removal became final, and Petitioner Sancharki has been detained for over 7 months since his order of removal became final.[4]

The Court now must assess whether each Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, and if so, whether Respondents have sufficiently rebutted that showing. Respondents address each Petitioner separately, and the Court finds it helpful to do the same.

### A. Jose Angel Diaz Cervantes

The Court finds that Petitioner Diaz Cervantes has shown good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. "Courts in this district have repeatedly held that prolonged detention, combined with failed or nonexistent removal efforts, satisfies the petitioner's initial burden." *Naghiyev v. Bondi*, No. 2:25-cv-1313 MIS/DLM, 2026 WL 700064, at *5 (D.N.M. Mar. 12, 2026) (collecting cases)). Here, Respondents acknowledge that Mr. Diaz Cervantes cannot be removed to his home country of Mexico because

---

[4] At the time the parties briefed this matter, Mr. Sancharki's post-removal detention had not yet reached 6 months. However, the Court analyzes Petitioner's claims as they stand today, and he has now been detained over 7 months since his order of removal became final without being removed.

he has CAT protection. Doc. 13 at 6. And thus far, Respondents have been unable to identify a third country that will receive him. *Id.* This satisfies Petitioner's burden of showing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Zadvydas*, 533 U.S. at 701.

The Court also finds that Respondents have failed to meet their burden of rebutting Petitioner's showing. To satisfy their burden, Respondents must present evidence in support of their position. *See id.* ("After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond *with evidence sufficient to rebut that showing*." (emphasis added)). While Respondents have presented evidence, their evidence is insufficient to rebut Petitioner's showing. Instead, Respondents' evidence—a declaration describing their removal efforts— supports the conclusion that Petitioner cannot be removed to Mexico and that Respondents have not been able to identify a third country that will accept him. Doc. 13-1 ¶¶ 4-9.

Respondents nevertheless ask this Court to deny Mr. Diaz Cervantes's Petition, arguing that he has prevented his own removal by maintaining his claim of fear, which prevents his return to Mexico. Doc. 13 at 6. They rely on Mr. Diaz Cervantes's claim that he is no longer afraid of returning to Mexico. *Id.* However, as Petitioner points out in his declaration, he still has a fear of returning to Mexico, and his request for deportation to Mexico simply reflects the extreme difficulty of his prolonged post-removal detention in the United States. *See* Doc. 15 at 12 (citing Doc. 16 ¶¶ 9-10, 15). This Court declines to blame Petitioner for the Government's failed removal efforts when an immigration court has concluded that he is more likely than not to face torture if he returns to Mexico.

Because Petitioner Diaz Cervantes has shown good reason to believe that his removal is not significantly likely in the reasonably foreseeable future, and because Respondents have not rebutted Petitioner's showing, his continued, indefinite detention violates Section 1231 and the Due Process Clause. Mr. Diaz Cervantes is, therefore, entitled to immediate release subject to appropriate conditions of supervision under Section 1231(a)(3). *Jimenez Chacon v. Lyons*, 811 F.Supp.3d 1299, 1313 (D.N.M. 2025); *Salazar-Martinez v. Lyons*, No. 2:25-cv-0961-KG-KBM, 2025 WL 3204807, at *2-3 (D.N.M. Nov. 17, 2025).

### B. S-H-

The Court finds that Petitioner S-H- has likewise shown good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. As previously mentioned, "prolonged detention, combined with failed or nonexistent removal efforts, satisfies the petitioner's initial burden." *Naghiyev*, 2026 WL 700064, at *5. S-H- has shown that he has been detained for over 8 months since his order of removal became final, Doc. 2 ¶¶ 74-75, 78, and Respondents acknowledge that, despite "diligent efforts," Petitioner's timeline for removal is unknown, Doc. 13 at 7. This satisfies Petitioner's burden of showing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Zadvydas*, 533 U.S. at 701.

The Court also finds that Respondents have failed to meet their burden of rebutting Petitioner's showing. To satisfy their burden, Respondents must present evidence rebutting Petitioner's showing. *See id.* ("After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond *with evidence sufficient to rebut that showing*." (emphasis added)). While Respondents have presented evidence, their evidence is insufficient to rebut Petitioner's

showing. Instead, Respondents' evidence—a declaration describing their removal efforts—supports the conclusion that Petitioner cannot be removed to Iran, and that to date, no third country has been identified that will accept him. Doc. 13-2 at 2; Doc. 13 at 7. S-H-'s continued, indefinite detention therefore violates Section 1231 and the Due Process Clause, and like Mr. Diaz Cervantes, he is entitled to immediate release subject to appropriate conditions of supervision under Section 1231(a)(3).

### C. Mohammad Sancharki

The Court finds that, though Petitioner Sancharki's post-removal period of 6 months had not passed when briefing was completed in this matter, Petitioner has shown good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. Mr. Sancharki has shown that he has been detained since his order of removal became final, and that ICE officers have told him that no third country will accept him. Doc. 2 ¶ 90. This is sufficient to shift the burden to Respondents to rebut Petitioner's showing.

The Court finds, assuming Respondents' removal efforts remain the same since they have not provided the Court with any updates since briefing was completed in this matter, that Respondents have failed to meet their burden. Respondents' evidence—a declaration describing their removal efforts—states that their request to remove Petitioner to the third country of Iraq has been denied. Doc. 13-3 at 2. Their evidence further states that, on February 26, 2026, they submitted travel documents to Germany and are awaiting a response. Doc. 13-3 at 2. Now, almost 6 months later, Petitioner remains detained and neither Petitioner nor Respondents have notified the Court that Germany has submitted a response. Respondents' evidence, therefore, does not rebut Petitioner's showing that there is no significant likelihood of removal in the reasonably foreseeable future. Mr. Sancharki's continued, indefinite detention, therefore, violates Section 1231 and the

Due Process Clause, and like Mr. Diaz Cervantes and S-H-, he is entitled to immediate release subject to appropriate conditions of supervision under Section 1231(a)(3).

### D. Mahammadreza Omidian

Lastly, the Court also finds that Petitioner Omidian has shown good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. As mentioned previously, "prolonged detention, combined with failed or nonexistent removal efforts, satisfies the petitioner's initial burden." *Naghiyev*, 2026 WL 700064, at \*5. Mr. Omidian has shown that he has been detained for over 13 months without being removed. He also alleges—and Respondents concede—that he cannot be removed to Iran and that no third country of removal has been identified. Doc. 2 ¶ 103; Doc. 13 at 7. This satisfies Petitioner's burden of showing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Zadvydas*, 533 U.S. at 701.

The Court also finds that Respondents have failed to meet their burden of rebutting Petitioner's showing. To satisfy their burden, Respondents must present evidence in support of their position. *See id.* ("After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond *with evidence sufficient to rebut that showing*." (emphasis added)). Again, while Respondents have presented evidence, their evidence is insufficient to rebut Petitioner's showing. Instead, Respondents' evidence—a declaration describing their removal efforts—states that "all Iranian removals are on pause" and that "[t]he anticipated timeline to remove Petitioner[] is currently unknown." Doc. 13-4 at 2. This, rather than rebutting Petitioner's showing, actually supports it. The Court, therefore, finds that Petitioner Omidian's continued,

indefinite detention also violates Section 1231 and the Due Process Clause, and that he is entitled to immediate release subject to appropriate conditions of supervision under Section 1231(a)(3).

**IV.**
**CONCLUSION**

For the reasons stated above, Petitioners' Verified Petition for a Writ of Habeas Corpus (Doc. 2) is **GRANTED**.

**IT IS THEREFORE ORDERED** that Respondents release Petitioners Jose Angel Diaz Cervantes, S-H-, Mohammad Sancharki, and Mohammadreza Omidian from immigration custody within **twenty-four (24) hours** of this Order and subject them to appropriate conditions of supervision under 8 U.S.C. § 1231(a)(3).

**IT IS FURTHER ORDERED** that Respondents promptly return Petitioners' property in Respondents' possession to them, specifically no later than 30 days after entry of this Order.

**IT IS FURTHER ORDERED** that Respondents must file a Notice of Compliance no later than Friday, August 14, 2026, confirming Petitioners' timely release.

**IT IS FURTHER ORDERED** that Petitioners may submit an application for fees and costs pursuant to the EAJA within 30 days of this Order. Respondents may respond to Petitioners' application no later than 14 days after the application is filed with the Court.

Finally, because the Court is adjudicating Petitioners' Verified Petition for a Writ of Habeas Corpus and granting them relief in this Order, Petitioners' pending Motion to Expedite (Doc. 20) is **DENIED AS MOOT**. The Court will issue a separate final judgment but retain jurisdiction over the matter.

**IT IS SO ORDERED.**

HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE